**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
                                        :

**IN THE MATTER OF NON-PARTY**       :
**SUBPOENA SERVED IN:**          :
                                        :   Case No. 1:18-mc-00554

ABN AMRO Capital USA LLC; Société Générale; :
BNP Paribas; Natixis, New York Branch;     :  [Original case pending in the United
Macquarie Bank Limited; Bank Hapoalim BM;  :  States District Court for the District of
The Bank of Tokyo-Mitsubishi UFJ Ltd., New  :  New Jersey, Civ. Action No. 2:18-
York Branch; and Israel Discount Bank of New :  00246-SDW-CLW]
York,                               :
                                        :
                 Plaintiffs,        :
                                        :
        v.                                :
                                        :
Peter G. Johnson, Peter B. Johnson, Mary Johnson, :
Timothy Johnson, Thomas Reich, Richard Gary  :
O'Connor, Nancy Pizzi, and William Yu,      :
                                        :
                 Defendants.     :
                                        :
------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY**
**AMERRA CAPITAL MANAGEMENT, LLC'S MOTION TO QUASH**
**<u>NON-PARTY SUBPOENA</u>**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 6

    A.   ABN's First Attempt to Compel Discovery from AMERRA ............................ 6

    B.   ABN Obtains Vast Discovery from Transmar and Others ................................ 7

    C.   ABN's Second Attempt to Compel Discovery From AMERRA ...................... 8

    D.   ABN Seeks to Convert Transmar's Bankruptcy to Chapter 7 on the Basis of Fraud ......... 9

    E.   The Trustee's Rule 2004 Discovery of AMERRA ........................................... 9

    F.   *U.S. v. Johnson* Criminal Convictions and Sentencing .................................. 10

    G.   The New Jersey Action ................................................................................... 10

    H.   The Subpoena ................................................................................................. 11

ARGUMENT ................................................................................................................... 12

THE SUBPOENA SHOULD BE QUASHED ................................................................ 12

    A.   The Subpoena Should be Quashed Because it is for the Impermissible Purpose of a Pre-Litigation Fishing Expedition Against a Non-Party ............................ 12

    B.   The Subpoena Creates an Undue Burden on a Non-Party ................................ 14

        1.   The Subpoena does not seek documents relevant to the claims and defenses in the New Jersey Action. ................................................................... 17

        2.   Plaintiffs already have any relevant documents........................................... 18

        3.   Plaintiffs should obtain the requested documents from Defendants............ 19

        4.   The Subpoena imposes enormous burdens on a non-party.......................... 20

    C.   The Subpoena Should be Quashed Because it Seeks Unwarranted Disclosure of Confidential and Proprietary Information to a Non-Party's Competitors in the Industry. ................................................................................................. 21

CONCLUSION................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Sav. Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.)*,
    330 F.3d 104 (2d Cir. 2003) ................................................................................14

*Anwar v. Fairfield Greenwich Ltd.*,
    297 F.R.D. 223 (S.D.N.Y. 2013) ...................................................................15, 18

*Arista Records LLC v. Lime Grp. LLC*,
    No. 06 CV 5936 KMW, 2011 WL 781198 (S.D.N.Y. Mar. 4, 2011) .........16, 19, 20

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,
    262 F.R.D. 293 (S.D.N.Y. 2009) .......................................................................15

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) .........................................................................15

*Corbett v. eHome Credit Corp.*,
    No. 10-26, 2010 WL 3023870 (E.D.N.Y. Aug. 2, 2010) .......................................21

*In re Drexel Burnham Lambert Grp., Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ................................................................16

*Fears v. Wilhelmina Model Agency, Inc.*,
    No. 02 Civ. 4911, 2004 WL 719185 (S.D.N.Y. Apr. 1, 2004) ...............................16

*Giuffre v. Maxwell*,
    221 F. Supp. 3d 472 (S.D.N.Y. 2016) ................................................................15

*Hughes v. Twenty-First Century Fox, Inc.*,
    No. 17CV7093, 2018 WL 1936096 (S.D.N.Y. Apr. 24, 2018) ...............................14

*Koch v. Pechota*,
    No. 10 CIV. 9152, 2013 WL 5996061 (S.D.N.Y. Nov. 8, 2013) ...........................15

*Malanga v. NYU Langone Med. Ctr.*,
    No. 14-9681, 2016 WL 7477561 (S.D.N.Y. Dec. 29, 2016) ..................................17

*Nicholas v. Poughkeepsie Sav. Bank/FSB*,
    No. 90 Civ. 1607, 1991 WL 113279 (S.D.N.Y. June 14, 1991)..............................12

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007).........................................................................19

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
    No. 03 CIV.1382 RWS, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ...................12, 14, 17

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) .................................................................................................................12

*In re Penn Cent. Commercial Paper Litig.*,
    61 F.R.D. 453 (S.D.N.Y. 1973) ..............................................................................................20

*Polanco v. NCO Portfolio Mgmt., Inc.*,
    No. 11 CIV. 7177 DAB DF, 2013 WL 3733391 (S.D.N.Y. July 15, 2013) ...........................19

*Sahu v. Union Carbide Corp.*,
    262 F.R.D. 308 (S.D.N.Y. 2009) ......................................................................................16, 19

*Salvatorie Studios, Int'l v. Mako's, Inc.*,
    No. 01 CIV. 4430BSJDF, 2001 WL 913945 (S.D.N.Y. Aug. 14, 2001) ...............................18

*Solow v. Conseco, Inc.*,
    No. 06 Civ. 5988, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008) ...............................................22

*Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*,
    No. 00 CIV. 9605 (DFE), 2002 WL 72930 (S.D.N.Y. Jan. 17, 2002) .....................................12

## STATUTES

Fed. R. Civ. P. 26 .....................................................................................................11, 14, 15, 18

Fed. R. Civ. P. 45 ................................................................................................................ *passim*

Fed. R. Bankr. P. 2004 ........................................................................................................ *passim*

Non-party AMERRA Capital Management, LLC ("AMERRA") respectfully submits this memorandum of law in support of its motion pursuant to Rule 45 of the Federal Rules of Civil Procedure to quash the subpoena for documents (the "Subpoena") issued by the plaintiffs (collectively, the "Plaintiffs") in the proceeding *ABN AMRO Capital USA LLC, et al. v. Johnson, et al.*, No. 2:18-cv-00246 (D.N.J.) (the "New Jersey Action"), which demands compliance in New York, at the offices of Reid Collins & Tsai LLP in New York.

## PRELIMINARY STATEMENT

The Subpoena issued by Plaintiffs is an extraordinary attempt to circumvent prior discovery orders of the United States Bankruptcy Court for the Southern District of New York. This is the fourth time that AMERRA has been burdened with document requests regarding this matter.  It is also offensive and improper in its substance, scope, and timing.  While AMERRA has timely served its many necessary objections to the 66 scattershot requests in the Subpoena, this is not ultimately an exercise in narrowing and negotiating otherwise valid discovery requests.  The unique and egregious facts surrounding the Subpoena compel that it be quashed in its entirety.[1]

The New Jersey Action is merely the latest battle in the war over the remains of Transmar Commodity Group Ltd. ("Transmar"), a family-owned supplier and processor of cocoa products founded by the Johnson family, and owned, managed and operated by the eight individuals who are the defendants (the "Defendants") in the New Jersey Action.  Plaintiffs in the New Jersey Action are lenders led by ABN AMRO Capital USA LLC ("ABN"), which also acted as their agent, that entered into a credit facility with Transmar, pursuant to which Plaintiffs loaned Transmar approximately $360 million, secured by, among other things, Transmar's inventory,

---

[1] In the unlikely event that the Motion to Quash were not granted, non-party AMERRA nonetheless preserves its specific objections to individual requests in the Subpoena.

accounts receivable, and forward contracts.  The Complaint in the New Jersey Action alleges that for many years, Defendants operated Transmar as a fraudulent scheme and knowingly and intentionally misrepresented Transmar's financial condition and the value of the lenders' collateral.  All of the claims asserted in the Complaint sound in fraud or misrepresentation.  No Defendant has yet even responded to the Complaint in the New Jersey Action.

As Transmar's business unraveled, it filed bankruptcy proceedings on December 31, 2016, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), in a case captioned *In re Transmar Commodity Group Ltd.*, Case No. 16-13625 (JLG).  After the bankruptcy proceedings were commenced, Transmar's books and its internal emails revealed what was later described in a filing by ABN as "conclusive proof of fraudulent activity."  (Ex. D ¶ at 2.)[2]  Shortly thereafter, three of the Defendants, Peter G. Johnson, Peter B. Johnson, and Thomas Reich, were indicted for "misrepresent[ing] material information about Transmar's finances" to Plaintiffs.  (Ex. E at ¶¶ 5-8.)  All three Defendants pled guilty to conspiracy to commit bank fraud and wire fraud, and are currently serving time in federal prison.  Peter G. Johnson was required to forfeit more than $1.5 million and Defendants were each ordered to pay $352.5 million in restitution to Plaintiffs, a sum for which they were sentenced to owe "Joint and Several" liability, and garnishment of each of their monthly incomes to repay Plaintiffs.  (Exs. F, G, H.)  Accordingly, as to these Defendants in the New Jersey Action, Plaintiffs already have achieved their objectives.

Since the bankruptcy filing in December 2016, ABN has desperately looked for a way to recoup the credit facility losses, repeatedly setting its sights on AMERRA.  AMERRA is not a party in the New Jersey Action, nor is it mentioned anywhere in the Complaint.  It is not a party

---

[2] Exhibit references are to the accompanying Declaration of John G. Hutchinson ("Hutchinson Decl.").

to the Plaintiffs' credit facility.  AMERRA does not have and has never had an ownership stake in Transmar, and no officer or director of AMERRA has ever sat on the board of Transmar. AMERRA was a cocoa trading partner with Transmar, and, like Plaintiffs, a lender to Transmar. After Plaintiffs, AMERRA likely is one of the largest creditors in Transmar's bankruptcy case, having suffered losses of almost $10 million on account of subordinated debt provided to Transmar.

Nonetheless, within weeks of Transmar's bankruptcy, ABN moved in the Bankruptcy Court, on January 23, 2017, for authority to issue broad and oppressive discovery to AMERRA, clamoring that an "investigation" into AMERRA was required, and representing to the Court that once it obtained the records of AMERRA's transactions with Transmar and affiliate Euromar Commodities GmbH ("Euromar"), ABN would show AMERRA's central role in the wrongdoing that brought down Transmar, and then proceed to sue AMERRA.  In fact, ABN did none of those things.  At the Bankruptcy Court's urging and with its guidance, AMERRA agreed with ABN to produce documents in connection with numerous purchase and sale transactions, as well as loans, involving AMERRA and Transmar or Euromar.  AMERRA painstakingly and at considerable expense assembled the documentation for the agreed-upon transactions during the relevant time period, and produced these documents to ABN, after which ABN never uttered another word about the production or raised a single issue regarding these transactions with Transmar and Euromar.

Instead, in April of 2018, ABN invented a new grand conspiracy theory and with it an entirely new discovery request, this time targeting one of AMERRA's managing directors and demanding wholesale production of her communications concerning Transmar and its affiliates. AMERRA objected to the discovery request on the grounds that it was an improper litigation

tactic and unduly burdensome.  AMERRA considered ABN to be abusing the Bankruptcy Rules

by pursuing discovery of its own potential claims in a manner that did not benefit Transmar's

bankruptcy estate and that did not afford any reciprocal discovery by AMERRA of ABN's own

actions and conduct in its dealings with Transmar.  In June 2017, the Bankruptcy Court agreed

and struck down ABN's requests as "unduly burdensome," further ruling that "it's clear to the

Court that ABN AMRO has identified Amerra as a litigation target and is seeking to utilize the

liberal discovery available under Rule 2004 to further this ultimate litigation," which is

improper.  The Bankruptcy Court was clear that further discovery of AMERRA by ABN would

require ABN to bring claims against AMERRA and conduct any such discovery under the

strictures of the Federal Rules of Civil Procedure which, among other things, would permit

reciprocal discovery by AMERRA, not a "free shot" by ABN.

Thereafter, neither ABN nor the other lenders elected to file any lawsuit against

AMERRA.  Instead, on January 8, 2018, they filed the New Jersey Action against the

Defendants.  With the Bankruptcy Court avenue to discovery foreclosed, Plaintiffs have now

served the Subpoena, purportedly in aid of the New Jersey Action.  In fact, the documents

requested – while massively more burdensome and improper than the one previously pursued

and precluded by the Bankruptcy Court – have little to do with the claims in the New Jersey

Action.  A substantial portion of the document requests in the Subpoena target purely internal

activities, transactions and deliberations of AMERRA that would have not the slightest probative

value for the Plaintiffs' fraud and misrepresentation claims – claims that in any event essentially

have been conceded by Defendants.  Moreover, Plaintiffs already have available millions of

pages of documents obtained in discovery in the Bankruptcy Court, including the entirety of

Transmar's own document and email files – files that will have any communications between

AMERRA personnel and Transmar that may be relevant.  Indeed, it is unclear what discovery

will be required in this matter at all:  Plaintiffs concede that they already have "conclusive proof"

of Defendants' fraud, some of the Defendants already have pled guilty to criminal fraud, ABN

readily acknowledges that the remaining Defendants may concede liability as well, and multi-

hundred million dollar restitution has been imposed against three of the Defendants and in favor

of Plaintiffs in the criminal proceeding.  To the extent that additional discovery is required, it

should be discovery of the Defendants, who have not even answered the Complaint at this time.

A sweeping, pre-answer Subpoena to a non-party is entirely unsupportable.

But ABN's purpose is clear:  it seeks to use the New Jersey Action to obtain the free and

non-reciprocal discovery against AMERRA that was denied to it by the Bankruptcy Court.  If

ABN wishes to sue AMERRA, it should do so, but it should not be permitted to use the New

Jersey Action as a vehicle to obtain massive amounts of documents from non-party AMERRA

while simultaneously preventing AMERRA from any right to reciprocal discovery.  This

subpoena is transparent and ill-advised gamesmanship and should be quashed in its entirety.

The analysis only gets worse upon an examination of the specific requests in the

Subpoena.  The Subpoena contains 66 exceptionally broad document requests, many of which

have nothing to do with the claims in the New Jersey Action, but instead seek information

specific to AMERRA, a non-party, such as AMERRA's investment returns; payments received

by AMERRA; AMERRA's communications with AMERRA's own accountants, auditors, and

investors; AMERRA's "awareness" of certain events; and details of AMERRA's dealings with

various third parties unrelated to the New Jersey Action.  Still other requests seek documents in

the exclusive possession or custody of Plaintiffs and/or Defendants, and that AMERRA would

not have ever seen or had access to.  Plaintiffs already have millions of pages of documents and

communications from Transmar's files, including its communications with AMERRA, and

AMERRA'S communications with Transmar affiliates, such as Euromar.  Transmar's files,

which were given to ABN by Transmar, included over 13,000 AMERRA emails (and more than

8,000 attachments to those emails), totaling almost 57,000 pages to or from AMERRA.

Plaintiffs have no need for the information they seek, and no right to it; Rule 45 is most

assuredly not a vehicle to allow a party to fish around for claims against non-parties.[3]

The Federal Rules of Civil Procedure compel that Plaintiffs' Subpoena be quashed in its

entirety.  First, and most fundamentally, the Subpoena should be quashed because Plaintiffs

issued it for the impermissible purpose of a pre-litigation, one way fishing expedition for claims

against AMERRA, a non-party.  Just as the Bankruptcy Court did last year, such discovery

should be precluded here.  Second, the Subpoena seeks information irrelevant to the New Jersey

Action and creates an extraordinary and undue burden on a non-party.  Finally, the Subpoena

should be quashed because it was issued by a competitor in the cocoa business seeking

unwarranted disclosure of a non-party's confidential information.

## FACTUAL BACKGROUND

A.  ABN's First Attempt to Compel Discovery from AMERRA

In January 2017, mere weeks after the Transmar bankruptcy proceedings were

commenced, ABN filed an ex parte motion with the Bankruptcy Court, and sought authority

under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") to issue 74

separate document requests to AMERRA – many of which are substantially the same as those in

---

[3] The fact that Plaintiffs' Subpoena does not require AMERRA to re-produce the correspondence Plaintiffs already have between AMERRA and "the email domains: @transmargroup.com or @transmarusa.com" (*see* Ex. A at Instruction No. 15), in no way alters the fact, or legal significance of the fact, that Plaintiffs have voluminous documents in their possession that enable them in all respects to prosecute their claims in the New Jersey Action. Nor does the fact that Plaintiffs are not affirmatively requiring AMERRA to re-produce these email communications alter the fact, or legal significance of the fact, that the Subpoena nonetheless seeks to impose an enormous undue burden on a non-party.

the Subpoena.  (Exs. J, K.)  In its motion papers, ABN proclaimed that "[w]hether and to what extent AMERRA benefitted at the expense of the Lenders, and [Transmar]'s estate generally, as a result of [Transmar]'s transactions and relationship with Euromar is ripe for investigation." (Ex. J at ¶ 18.)  At a February 1, 2017 hearing, ABN's counsel went so far as to tell the Bankruptcy Court that "it's beyond question" that AMERRA "sat at the center of the web of transactions which we believe were part and parcel of what brought down [Transmar]."  (Ex. L at 37:23-38:1.)  ABN's counsel told AMERRA's counsel in no uncertain terms that ABN was looking to file a lawsuit against AMERRA.

After several conferences with, and input from, the Bankruptcy Court, AMERRA agreed to produce to ABN documents, "dating from January 1, 2016 to the present, sufficient to evidence the fact, terms and conditions of transactions between or among AMERRA, Euromar . . . and/or [Transmar]."  (Ex. M at 2.)  At substantial cost, AMERRA produced voluminous records concerning 48 separate cocoa transactions between AMERRA and Transmar and/or Euromar, as well as documentation relating to claims AMERRA held against Transmar, Euromar, and other affiliates.  Although ABN has never raised any questions about any information in that production or regarding AMERRA's business transactions with Transmar (*see* Ex. N at ¶ 2), several of the requests in the Subpoena seek the same or related documents to those voluntarily produced by AMERRA more than a year ago.

B.  ABN Obtains Vast Discovery from Transmar and Others

ABN also obtained vast discovery from Transmar, which produced more than 1.1 million documents totaling more than 2.7 million pages to ABN, including over 13,000 emails (and more than 8,000 attachments to those emails), totaling almost 57,000 pages to or from AMERRA. That production includes AMERRA's emails with Transmar, Euromar, their affiliates, and the eight Defendants in the New Jersey Action, who ABN alleges are senior executives, directors,

and employees that controlled Transmar during the relevant time period.  (*See* Ex. I at ¶¶ 2, 40.)
In essence, Transmar gave what it had to ABN.

    C.  <u>ABN's Second Attempt to Compel Discovery From AMERRA</u>

     In May 2017, having ignored AMERRA's substantial document production and having
no support for its prior assurances to the Bankruptcy Court that these transactions would
somehow reveal nefarious conduct by AMERRA, ABN filed a second motion under Rule 2004
(the "<u>Second Rule 2004 Motion</u>") against AMERRA, asking for entirely new, broad and
intrusive discovery into AMERRA and its managing director, Nancy Obler, demanding all
documents and communications involving Nancy Obler that concern, in any way, Transmar or
any of a broad and indeterminate universe of "affiliates" and "related entities," as well as an
examination of Ms. Obler under oath.  (Ex. O at ¶ 5).  AMERRA objected to the Second Rule
2004 Motion on the grounds that it was unduly burdensome and propounded for an improper
purpose.

     On June 9, 2017, the Bankruptcy Court denied the Second Rule 2004 Motion and held
that the further discovery sought by ABN was not permitted.  (Exs. P, Q.)  The Court found
ABN's "requested discovery [to be] unduly burdensome."  (Ex. Q at 17:14-15).  The Court noted
that ABN had access to Ms. Obler's and AMERRA's communications with Transmar and to its
own consultants' analyses.  (*Id.* at 17:15-21.)  Even though the documents and testimony ABN
sought "may shed light on [Transmar]'s operations and financial affairs," (*id.* at 18:3-5), because
of ABN's access to the relevant information and the burden discovery would have on AMERRA,
the Bankruptcy Court denied the request (*id.* at 18:6-13).  Further, it was "clear to the
[Bankruptcy] Court that ABN AMRO has identified Amerra as a litigation target and is seeking
to utilize the liberal discovery available under Rule 2004 to further this ultimate litigation. That's
not permitted."  (*Id.* at 22:7-11.)

D. <u>ABN Seeks to Convert Transmar's Bankruptcy to Chapter 7 on the Basis of Fraud</u>

In May of 2017, ABN filed a motion in the Bankruptcy Court seeking to convert Transmar's bankruptcy case to a chapter 7 liquidation. The basis of the motion to convert was that "[t]he Johnson family's management and control of [Transmar] must end now that conclusive proof of fraudulent activity has surfaced." (Ex. D at ¶ 2.) In its motion papers, ABN explained that "[t]he documents demonstrating the fraud are compelling and conclusive," and quoted from internal Johnson family emails, including internal Transmar emails from Peter B. Johnson in 2016 describing "two versions of the borrowing base . . . [o]ne 'true' and one 'adjusted,'" and another admitting that "Transmar consistently submits inaccurate borrowing base reports to the banks, the discovery of which is an existential threat to our company." (*Id.* at ¶¶ 15-16.) On July 26, 2017, the Bankruptcy Court granted ABN's motion to convert the Transmar's chapter 11 case to a chapter 7 case. (Ex. R.) Following conversion of Transmar's bankruptcy case to a liquidation under chapter 7, Alan Nisselson was appointed as the chapter 7 trustee (the "<u>Trustee</u>").

E. <u>The Trustee's Rule 2004 Discovery of AMERRA</u>

In March 2018, AMERRA was hit with a third discovery request, this time from the Trustee (the "<u>Trustee's 2004 Motion</u>"). By its counsel, the Trustee sent AMERRA seven new document requests. Ultimately, AMERRA agreed to produce documents within five of these categories. AMERRA opposed the Trustee's 2004 Motion as to the remaining two document requests.

On August 17, 2018, the Bankruptcy Court granted in part and denied in part the Trustee's 2004 Motion, allowing limited further discovery from AMERRA. In its ruling, the Bankruptcy Court distinguished the Trustee's requests from ABN's prior requests in that, unlike ABN, "the Trustee has not identified AMERRA as a litigation target and is seeking the discovery

in furtherance of his fiduciary duties to [Transmar]'s estate and creditors." *In re Transmar*, Case No. 16-13625 (S.D.N.Y. Bankr.), ECF No. 567 at 12-13 n.6.

F.   <u>*U.S. v. Johnson* Criminal Convictions and Sentencing</u>

On August 2, 2017, the U.S. Attorney for the Southern District of New York filed an indictment charging that Peter G. Johnson, Peter B. Johnson, and Thomas Reich "misrepresent[ed] material information about Transmar's finances" to Plaintiffs, including that they "manipulated" borrowing base reports to Transmar's lenders "to give the false impression" that Transmar had sufficient collateral "to support the amount of credit the Banks were extending."  (Ex. E at ¶¶ 5-8.)

Peter G. Johnson, Peter B. Johnson, and Thomas Reich all pled guilty to conspiracy to commit bank fraud and wire fraud, and were sentenced to serve 36 months, 30 months, and 3 months, respectively, in federal prison.  (Exs. F, G, H.)  They were also ordered to pay $352.5 million in restitution to the eight Plaintiffs in the New Jersey Action, a sum for which these Defendants have "Joint and Several" liability.  (*Id.*)  It is unclear what additional relief could be obtained from these Defendants in the New Jersey Action.

G.   <u>The New Jersey Action</u>

On January 8, 2018, Plaintiffs filed the New Jersey Action in New Jersey federal court against members of the Johnson family and other senior executives, directors, and employees that controlled Transmar, who Plaintiffs allege "were directly involved in the long-running fraudulent scheme."  (Ex. I at ¶ 2.)  Plaintiffs bring six causes of action, each sounding in fraud or negligence.

According to Plaintiffs, liability already is established.  Plaintiffs allege that "Defendants' internal emails establish their liability beyond any question or doubt," including emails where "Defendant communicated openly about the fraud, including discussing the mechanics of

inflating collateral value, the necessity of maintaining two sets of books, and even the 'existential threat' posed to the company by their conduct." (*Id.* at ¶ 10.)

On March 26, 2018, the New Jersey Court stayed the New Jersey Action "pending the full disposition of the Defendants' criminal charges in the Southern District of New York." (Ex. S.)  Only recently, on October 1, 2018, following the sentencing of the three Defendants, the New Jersey Court reopened the New Jersey Action.  (*See* Ex. T.)  On October 23 and 30, 2018, the New Jersey Court entered scheduling orders which show that the New Jersey Action still is in its infancy:  Defendants' deadline to answer the Complaint is still almost a month away, on December 21, 2018, and the parties are not required to exchange Rule 26 disclosures until January 7, 2019.  *See* New Jersey Action, ECF Nos. 74, 76.

H.  The Subpoena

With the New Jersey Action reopened, Plaintiffs wasted no time to once again target AMERRA.  On November 6, 2018, Plaintiffs served the Subpoena, which contains 66 sweeping document requests, many with multiple subparts.  (Ex. A.)  In complete disregard of the Bankruptcy Court's order precluding ABN from obtaining one-way discovery against a potential litigation target, the Subpoena, which is far more sweeping than anything sought and denied in the Bankruptcy Court, clearly is targeted at obtaining information for potential claims against AMERRA, but is largely irrelevant to the New Jersey Action, while simultaneously shielding Plaintiffs from any discovery by AMERRA.  Indeed, Plaintiffs seek some of the same documents that the Bankruptcy Court expressly held were unnecessary or unduly burdensome for AMERRA to produce in its prior rulings on the Second Rule 2004 Motion.

On November 28, 2018, AMERRA served timely objections to the Subpoena as well as a letter to Plaintiffs demanding withdrawal of the Subpoena.  (Exs. B, C.)  On November 29, 2018, the undersigned counsel held a meet and confer with Jeff Gross of Reid Collins Tsai LLP,

counsel for Plaintiffs.  (Hutchinson Decl. at ¶ 6.)  Mr. Gross refused to withdraw the Subpoena, and confirmed that he had not yet issued document requests to any of the Defendants in the New Jersey Action.  (*Id.*)

## ARGUMENT

## THE SUBPOENA SHOULD BE QUASHED

A. The Subpoena Should be Quashed Because it is for the Impermissible Purpose of a Pre-Litigation Fishing Expedition Against a Non-Party

Plaintiffs served the Subpoena for the improper purpose of obtaining unilateral discovery from AMERRA in advance of bringing litigation against AMERRA, and for this reason alone the Subpoena should be quashed.  This Court does not permit discovery requests aimed at obtaining information from potential litigation targets or for use in other proceedings.  *See Nicholas v. Poughkeepsie Sav. Bank/FSB*, No. 90 Civ. 1607, 1991 WL 113279, at *2 (S.D.N.Y. June 14, 1991) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied.")*; Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 CIV.1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (granting a motion to quash a subpoena because "[d]efendants cannot use this subpoena to obtain information for use in state court proceedings")*; see also Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*, No. 00 CIV. 9605 (DFE), 2002 WL 72930, at *4 (S.D.N.Y. Jan. 17, 2002) (denying motion to compel where "it appears that Plaintiff was merely seeking to learn about other U.S. companies it could sue").  The U.S. Supreme Court has stressed the importance of this constraint as well.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n.17 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a

discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.").

Here, the Subpoena is a transparent and wrongful effort to circumvent the Bankruptcy Court's orders and to use the New Jersey Action as a vehicle to obtain non-reciprocal, non-party discovery from AMERRA.  Plaintiffs' gamesmanship is most evident from the fact that many of the requests are targeted to topics unique to AMERRA and wholly irrelevant to the New Jersey Action.[4]  For example, the Subpoena seeks documents regarding AMERRA's investment returns, payments received by AMERRA, and AMERRA's communications with AMERRA's own accountants, auditors, and investors, which are wholly irrelevant to whether or not Defendants defrauded Plaintiffs.  (Ex. A, Request Nos. 39, 41, 42, 43, 44, 46, 65.)  Similarly, Plaintiffs seek documents and communications concerning AMERRA's "awareness" of, "reaction to", and "knowledge of" various improprieties in Transmar's financials and reporting that, to the extent relevant to Plaintiffs' claims against Defendants, Plaintiffs have no reason to believe are even disputed by Defendants.  (*Id.*, Request Nos. 11, 15, 63.)  Further, even though Plaintiffs' claims relate solely to the losses due to their credit facility with Transmar, Plaintiffs demand information about AMERRA's dealings with third parties.  (*See, e.g.*, *id.*, Request No. 38 ("Documents concerning AMERRA's disposition of, collection of, or efforts to monetize debt owed by Euromar and Transmar Switzerland GmbH.").)

For this reason, ABN previously was denied much of the very discovery sought in the Subpoena.  The Bankruptcy Court recognized that "it's clear to the Court that ABN AMRO has identified Amerra as a litigation target and is seeking to utilize the liberal discovery available

---

[4] Bizarrely, there is an additional group of requests seeking documents from AMERRA that AMERRA would never have seen, have nothing to do with AMERRA or its business relations with Transmar, and that in all likelihood would be in the possession of Plaintiffs themselves.  (*See, e.g.*, Ex. A, Request Nos. 7, 8, 9, 10, 12, 18, 19, 37, 40, 45, 59.)

under Rule 2004 to further this ultimate litigation. That's not permitted." (Ex. Q at 22:7-11.)
But rather than learn its lesson, ABN has doubled down and is now using the vehicle of the New
Jersey Action to target AMERRA with discovery demands even more outrageous and transparent
than its earlier Rule 2004 motions.

If Plaintiffs determine to commence litigation against AMERRA – and Plaintiffs should
be able to determine whether they can do so based on the voluminous discovery already had in
the Transmar bankruptcy case – they will have all the discovery rights made available through
the Federal Rules of Civil Procedure, and so will AMERRA. In the meantime, however, a Rule
45 subpoena is not a vehicle to permit excessive, one-way, unlimited pre-litigation discovery
against a third party, and ABN should not be permitted to abuse it this fashion.

B.   The Subpoena Creates an Undue Burden on a Non-Party

The strictures of Rule 45 compel the same result. Rule 45 provides that "[o]n timely
motion, the court for the district where compliance is required must quash or modify a subpoena
that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The decision to
quash a subpoenas is "'entrusted to the sound discretion of the court.'" *American Sav. Bank,
FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting
*United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

As "[t]he party issuing the subpoena," Plaintiffs "must demonstrate that the information
sought is relevant and material to the allegations and claims at issue in the proceedings." *Night
Hawk Ltd.*, 2003 WL 23018833, at *8. Additionally, "[a]ny subpoena that is issued to a non-
party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement."
*Hughes v. Twenty-First Century Fox, Inc.*, No. 17CV7093, 2018 WL 1936096, at *2 (S.D.N.Y.
Apr. 24, 2018) (*citing Ireh v. Nassau Univ. Med. Ctr.*, No. CV 06-09, 2008 WL 4283344, at *5
(E.D.N.Y. Sep. 17, 2008)). That is:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Only in the event that Plaintiffs meet their burden to establish relevance does the burden shift to AMERRA, as movant, to demonstrate undue burden. *See Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 475 (S.D.N.Y. 2016). Undue burden turns on considerations such as relevance, the necessity of the information, the breadth and particularity of the requests, the burden imposed, and the status of a witness as a non-party. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (quashing subpoena to non-party based on overbroad document requests and unclear relationship to the subpoenaing party's discovery needs). Determining whether a subpoena imposes an undue burden "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it," which "calls upon the trial court to consider whether the information is necessary and whether it is available from any other source." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 299-300 (S.D.N.Y. 2009); *see Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013) (This balancing "requires the Court to 'consider whether the information is necessary and whether it is available from any other source.'") (citation omitted).

The fact that the discovery is sought from a non-party makes the argument to quash all the more compelling. *See, e.g., Koch v. Pechota*, No. 10 CIV. 9152, 2013 WL 5996061, at *1 (S.D.N.Y. Nov. 8, 2013) ("[T]he status of a witness as a non-party to the underlying litigation entitles [the witness] to consideration regarding expense and inconvenience.") (citations

omitted); *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 781198, at

*2 (S.D.N.Y. Mar. 4, 2011) ("[W]here, as here, discovery is sought from a non party, the Court

should be particularly sensitive to weighing the probative value of the information sought against

the burden of production on the non party.") (citations omitted); *Fears v. Wilhelmina Model*

*Agency, Inc.*, No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) (same).

More than a year ago, the Bankruptcy Court held that the two document requests in

ABN's Second Rule 2004 Motion, seeking just one AMERRA employee's communications

"concerning [Transmar], Euromar, any of their affiliates, or related entities" were unduly

burdensome under the far more deferential Rule 2004 standard.  (*See* Ex. Q, at 17:14-21 ("The

Court finds that the requested discovery is unduly burdensome. Not only has ABN AMRO had

access to documents produced by [Transmar] that contained Ms. Obler's emails and other

communications between Amerra and [Transmar], it is undisputed that throughout 2016 ABN

AMRO engaged outside consultants to evaluate Transmar's business, including its financials, the

borrowing base inventory, and internal controls.").)  Notably, bankruptcy courts have held that

Rule 2004 discovery is so broad that it *is* a fishing expedition.  *See, e.g.*, *In re Drexel Burnham*

*Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("Rule 2004 discovery is broader

than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards.

It can be legitimately compared to a fishing expedition.").

Now, in disregard of the Bankruptcy Court's ruling, Plaintiffs are seeking the same

information *and far more* by issuing 66 document requests, rather than just two, and are

attempting to get away with it under the *much more restrictive standard* set forth in Federal Rule

of Civil Procedure 45, which does not permit fishing expeditions.  *See, e.g.*, *Sahu v. Union*

*Carbide Corp.*, 262 F.R.D. 308, 317 (S.D.N.Y. 2009) ("The Court also denies as unduly

burdensome Plaintiffs' request to take discovery from third party Arthur D. Little. . . . Here,

Plaintiffs wish to conduct what amounts to a fishing expedition into Arthur D. Little's files.").

Just as the Bankruptcy Court found in denying ABN's Second Rule 2004 Motion, the Subpoena,

seeking those same documents and more, must be quashed as unduly burdensome.

> 1.  *The Subpoena does not seek documents relevant to the claims and defenses in the New Jersey Action.*

Here, Plaintiffs have not met, and cannot meet, their burden to demonstrate that the

information sought is relevant and material to the allegations and claims at issue in the New

Jersey Action.  Instead, as discussed above, the Subpoena improperly seeks documents directed

at AMERRA's activities that are wholly irrelevant to the claims asserted in the New Jersey

Action, such as all details of every transaction between AMERRA and a vast and indeterminate

list of Transmar affiliates and related entities, all AMERRA's internal documents concerning the

claims it recently filed in the Euromar insolvency and Transmar bankruptcy proceedings,

AMERRA's proprietary credit analyses regarding Transmar's distant affiliates, AMERRA's

internal assessments of AMERRA's own rights, AMERRA's communications with Plaintiffs

regarding AMERRA's contractual rights, and AMERRA's communications with its own

auditors and investors.  (Ex. A, Request Nos. 4, 6, 32, 34, 39, 41, 43, 50, 65.)

This Court quashes subpoenas issued to non-parties where the issuing party fails to

demonstrate the relevance to the claims and defenses at issue in the litigation.  *See Malanga v.

NYU Langone Med. Ctr.*, No. 14-9681, 2016 WL 7477561, at *1 (S.D.N.Y. Dec. 29, 2016)

(granting motion to quash and explaining that "the critical issue is whether the Subpoena seeks

information that is relevant *to the claims or defenses in this action*") (emphasis added); *Night

Hawk Ltd.*, 2003 WL 23018833, at *8 (the issuing party "must demonstrate that the information

sought is relevant and material to the allegations and claims at issue in the proceedings").

Moreover, fraud – the fundamental basis of all the claims in the New Jersey Action – has been established, is likely to be conceded, or the facts relating thereto otherwise are available through the enormous trove of documents already in the possession of Plaintiffs. Three Defendants have pled guilty to conspiracy to commit bank fraud and wire fraud with sentences ordering them to pay restitution to Plaintiffs for their loss. It appears that at least some, and perhaps all, of the Defendants do not deny, and may concede, liability. *See* New Jersey Action, ECF No. 59 at 9 ("It is possible that the Civil-Only Defendants will concede liability now that the Civil-Criminal Defendants have pleaded guilty."). Moreover, Plaintiffs already have the Transmar email accounts for all Defendants, which ABN has touted as containing "conclusive proof of fraudulent activity." (Ex. D at ¶ 2.) The documents sought by the Subpoena, to the extent relevant at all (see below), simply are not necessary and certainly not material to the claims at issue in the New Jersey Action. *See Salvatorie Studios, Int'l v. Mako's, Inc.*, No. 01 CIV. 4430BSJDF, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001) (quashing subpoena because "Rule 26(b)(1) of the Federal Rules of Civil Procedure restricts discovery to matters relevant to the claims and defenses of the parties" and the issuing party "has failed to establish that the settlement agreement it seeks is in any way relevant to the claims or defenses raised in *this* action—a different lawsuit against a different party") (emphasis in original); *see also Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. at 227 (refusing to compel non-party deposition where "Defendants have failed to show any respect in which the testimony of Lamore or Suh would enable them to prove any fact that they cannot already prove").

       2.   *Plaintiffs already have any relevant documents.*

Second, Plaintiffs already have access to massive amounts of pre-answer discovery. Transmar has produced more than 1.1 million documents totaling more than 2.7 million pages to ABN, a production that included over 13,000 emails (and more than 8,000 attachments to those

emails), totaling almost 57,000 pages to or from AMERRA.  Because of its unfettered access to Transmar's documents and communications, including with AMERRA, ABN *already has* any relevant AMERRA emails with Transmar, Euromar, their affiliates, and the eight Defendants in the New Jersey Action.  The requested information is simply not necessary for Plaintiffs to prosecute their claims in the New Jersey Action.  *See Sahu*, 262 F.R.D. at 317-18 (rejecting discovery from non-party as unduly burdensome where "[t]he Court can see no reason to permit this in light of the substantial burden it would impose and the low likelihood that it would yield documents beneficial to Plaintiffs beyond those they already have from prior discovery and will receive from the discovery permitted herein").

      3.   *Plaintiffs should obtain the requested documents from Defendants.*

      Third, Plaintiffs seek documents and communications that – to the extent not already in their possession – would be in the possession of Defendants.  This Court has refused discofvery against non-parties to obtain communications with a party to the litigation unless there is first a finding that "that the documents sought from the non-party could not be obtained from the [party to the litigation]."  *Polanco v. NCO Portfolio Mgmt., Inc.*, No. 11 CIV. 7177 DAB DF, 2013 WL 3733391, at *2 (S.D.N.Y. July 15, 2013) (quashing subpoena because "Defendant has control over the Harris documents at issue and an independent obligation to produce them, it would impose an undue burden on [non-party] Harris to require it to respond separately to a subpoena seeking the same material"); *Arista Records LLC*, 2011 WL 781198, at *4-*5 (reversing order compelling document production from non-party Licensees because "Defendants have provided no specific reason why there would be any discrepancy between what Plaintiffs have already produced and what the Licensees were ordered to produce in the January 31 Order"); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party

defendant.").  Indeed, "[t]he rationale for permitting an independent action for production of documents and things from a nonparty witness presumes a situation in which the items sought are unavailable from a party, or are not otherwise obtainable by the movant's own efforts." *In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. 453, 467 (S.D.N.Y. 1973) (citations omitted). AMERRA's motion to quash is made even more compelling because Plaintiffs issued the Subpoena to non-party AMERRA before pursuing any document requests to their adversaries in the New Jersey Action.

Here, Plaintiffs have not demonstrated, and cannot demonstrate, that the documents sought from non-party AMERRA, to the extent not already in ABN's vast document collection, cannot be obtained from the eight Defendants in the Action.  Indeed, Plaintiffs concede that they have not even served document requests on the Defendants. (Hutchinson Decl. at ¶ 6.)

4. *The Subpoena imposes enormous burdens on a non-party.*

Finally, the additional documents sought in the Subpoena will massively burden AMERRA (which already has been massively burdened for documents on three separate occasions by ABN and the Trustee at considerable expense), but will add virtually nothing to prove the claims that Plaintiffs are asserting against Defendants.  Clearly, the best sources of information about Defendants' alleged fraud against Plaintiffs will be Defendants' own documents and communications, and all of that information either is in ABN's possession or should be obtained from Defendants in the ordinary course of discovery in the New York Action. While Plaintiffs may not have purely internal AMERRA communications, such documents are unlikely to be relevant to Plaintiffs' fraud claims, and any relevance that may exist is far outweighed by the burden to AMERRA.  *See Arista Records LLC*, 2011 WL 781198, at *3 ("even if the Licensees' internal communications were somehow probative of Plaintiffs' conduct and attitude . . . the burden of collecting, searching, reviewing, and producing all internal

communications 'relating to their licenses with Plaintiffs and/or relating to [Defendants]' would significantly outweigh any potential probative value, particularly here, where the burden would be imposed on non-parties").

 The potential burden on AMERRA is evident in the sweeping scope of the requests included in the Subpoena.  Plaintiffs seek, for example, all communications by anyone associated with AMERRA concerning any transaction, proposed transaction, inventory, audits, inventory, audits, inspections, use of funds, intercompany balances, intercompany claims, repayment of loans to, and financial liquidity of Transmar, Euromar, and a vast and indeterminate list of affiliates and related entities (*see* Ex. A, Request Nos. 1, 12, 13, 16, 17, 23, 26, 29, 35, 36, 49), as well as all communications that relate in any possible way to a broad open-ended set of agreements or deals, including some to which AMERRA was not even a party (*id.*, Request Nos. 7, 8, 9, 12, 13, 26, 27, 40).  Particularly in view of courts' special sensitivity to the burden imposed on non-parties, the facts here mandate that the Subpoena be quashed in its entirety as unduly burdensome.  *See, e.g.*, *Corbett v. eHome Credit Corp.*, No. 10-26, 2010 WL 3023870, at *3-4 (E.D.N.Y. Aug. 2, 2010) ("Since the information sought by subpoena is undisputed, easily obtainable from another source, and, at best, tangential to the claims at issue in this case, the burden imposed by the third-party subpoenas outweighs any likely benefit to Corbett in prosecuting the instant action.").

 C. <u>The Subpoena Should be Quashed Because it Seeks Unwarranted Disclosure of Confidential and Proprietary Information to a Non-Party's Competitors in the Industry.</u>

 Separately, the Subpoena should be quashed because Plaintiffs have not met the additional burden courts have imposed for discovery that intrudes into a non-party's business affairs and that requires gathering confidential information.  Rule 45 provides that "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is

required may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i).  This Court grants motions to quash a subpoena to protect confidential information, particularly where, like here, the documents sought have "little or no relevance to the claims and defenses" in the litigation.  *See Solow v. Conseco, Inc.,* No. 06 Civ. 5988, 2008 WL 190340, at *1, *4-5 (S.D.N.Y. Jan. 18, 2008) (quashing subpoena for non-party asset and financial information based on non-party's "legitimate interest in maintaining the confidentiality of proprietary documents").

Here, the Subpoena seeks document production that would include broad categories of sensitive and internal documents reflecting AMERRA's confidential, proprietary investment and trading strategies and deal structures merely because they are "concerning" Transmar, Euromar, or a potentially vast and indeterminate list of third parties including numerous affiliates or related entities.  This includes, for example, AMERRA's internal documents or communications concerning "AMERRA's credit decisions, evaluation, or analysis," "ongoing reporting, exposure reports, credit analysis, monitoring, due diligence, or risk reporting," and "any approval, due diligence, valuation, or analysis conducted" as long as they are concerning Transmar or any of a vast and indeterminate list of third parties.  (Ex. A, Request Nos. 23, 24, 34.)  The Subpoena unnecessarily and inappropriately purports to require AMERRA to disclose trade secrets and confidential commercial information to Plaintiffs, a number of which have affiliates that are AMERRA's direct competitors.  Given the extremely confidential information demanded from a non-party by its competitors, not to mention the complete irrelevance of the information to Plaintiffs' claims in the New Jersey Action, the Subpoena should be quashed pursuant to Fed. R. Civ. P. 45(d)(3)(B)(i).

## **CONCLUSION**

For these reasons, non-party AMERRA respectfully requests that the Court quash the

Subpoena in its entirety, and grant such further relief as the Court deems just and proper.


Dated: New York, New York
      November 30, 2018               SIDLEY AUSTIN LLP

                                   By:    /s/ John G. Hutchinson
                                       John G. Hutchinson
                                       (jhutchinson@sidley.com)
                                       Lee S. Attanasio
                                       (lattanasio@sidley.com)
                                       Benjamin F. Burry
                                       (bburry@sidley.com)
                                       787 Seventh Avenue
                                       New York, New York 10019
                                       Telephone:  (212) 839-5300
                                       Facsimile:  (212) 839-5599

                                       *Attorneys for Non-Party*
                                       *AMERRA Capital Management, LLC*